## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### CENTRAL ISLIP

| | |
|---|---|
| MICHAEL BETZAG, individually and on behalf of all others similarly situated, | 2:23-cv-09602 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| BP PRODUCTS NORTH AMERICA INC., | Jury Trial Demanded |
| Defendant | |

Plaintiff Michael Betzag ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.     The New York Legislature enacted General Business Law ("GBL") § 518 to prevent "duping of customers by posting or tagging low prices that turn out to be available for cash purchases only."

2.     Specifically, GBL § 518 provides that "No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means."

3.     Its purpose was to prevent luring consumers "on the basis of the 'low, rock-bottom price' [with one payment method] only to find at the cash register that the price will be higher if a [different payment method] is used."

4.     This law sought to prevent "unannounced price increases at the point of sale" by assuring the public they could "depend on advertised…prices."

5.    Though businesses may offer a discount based on payment method, the New York State Division of Consumer Protection ("DCP") reminded consumers that "businesses are required to inform [them] of the higher [] price for a product or service by posting the higher price" before they reach the point of sale.[1]

6.    The DCP even cautioned New Yorkers to "COMPARE the price advertised on the gas station's sign and on the pump to make sure they are the same."[2]

7.    According to a survey of drivers from the National Association of Convenience Stores ("NACS"), 60 percent would be willing to drive five minutes "out of the way" for five cents per gallon in savings on gas, with almost 40 percent willing to drive twice that distance.

8.    Another study found that price was the most important factor in choosing where to get gas for 79 percent of drivers.

9.    The leading mobile application for helping drivers find low gas prices, GasBuddy, determined that 60 percent of drivers look to roadside gas station price signs when deciding where to fill their tanks.

10.   To attract price-conscious motorists, Amoco stations prominently display the price of gas from pylons and price boards in red LED numbers from pylons and sign boards containing or connected to its company logos, brand name

---

[1] Consumer Alert, December 2020.
[2] Consumer Alert, Tips to New Yorkers to Save Money at the Gas Pump, December 2022.

and color scheme, to motorists in need of a fill up.



11.   Few motorists may even realize that the price displayed from the

roadside signs is not the price they will pay, given that once they have decided on a filling station based on price, they will mentally "check out."

12.   Those who are vigilant will learn that the prices they viewed from the road were not available to them, if, like 96 percent of drivers, they do not use cash at the gas station.

13.   This is because the roadside sign prices were seventy cents less than the price at the pump, shown through the difference in the prices below.



14.   According to a former New York State Attorney General, this price increase "is a classic example of bait and switch. Consumers were lured in by the

lower price but when they went to fill up their tanks, they were hit with a higher price if they didn't pay with cash."

15. Though the roadside signs contain the word "Cash," this is in significantly smaller letters than the illuminated red neon price.

16. Moreover, the roadside signs do not disclose this lower price is available only to those who use a particular payment method.

## JURISDICTION

17. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

18. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

19. Plaintiff is a citizen of New York.

20. Defendant BP Products North America Inc. ("Defendant") is a citizen of Maryland and Texas.

21. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from Defendant.

22. The members of the class Plaintiff seeks to represent are more than one hundred, because thousands of drivers buy gas at Amoco stations every day in New York and rely on its roadside signs which promote only its lowest prices.

23. The Court has jurisdiction over Defendant because it transacts business

within New York through its control of franchisees' signage bearing Amoco's color schema, company name, trade dress and logo ("marks").

24.   The Court has jurisdiction over Defendant because it has committed tortious acts within this State through its agreements with franchisees which, upon information and belief, require its approval of all signage bearing Amoco marks, which is misleading to consumers in this State.

25.   The Court has jurisdiction over Defendant because it has committed tortious acts outside this State by designing, approving, and/or authorizing pricing signs in a manner which causes injury to consumers within this State by misleading them as to the price of gasoline by not informing them this is a discounted price which they are unlikely to receive and/or derives substantial revenue from the sale of gasoline in this State, through the fees it earns from franchisees, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

26.   Plaintiff resides in Nassau County.

27.   Venue is based on Plaintiff's residence in Nassau County.

28.   Venue is based on Plaintiff's residence in Nassau County because a substantial or entire part of the events or omissions giving rise to his claims occurred in Nassau County, including his viewing and reliance of the Amoco roadside pricing

signs which displayed only the lowest prices, even though this was not the price he ended up paying.

29.   Venue is based on Plaintiff's residence in Nassau County because this is where his causes of action accrued, including his viewing, reliance, purchase, and payment of money for and towards, gasoline from Amoco stations.

30.   Plaintiff viewed, relied on, purchased, paid money for or towards gasoline sold at Amoco stations, in reliance on the representations and omissions identified here in Nassau County.

31.   Plaintiff first became aware the representations and omissions were false, misleading and unlawful in Nassau County.

## PARTIES

32.   Plaintiff Michael Betzag is a citizen of Nassau County, New York.

33.   Defendant BP Products North America Inc. is a Maryland corporation with a principal place of business in Texas.

34.   BP supplies and sells gasoline to its Amoco franchises.

35.   Recognizing the importance of company logos, brand names, trade dress and colors to promote public recognition and drive sales, BP requires Amoco franchisees to follow strict requirements for any signage with its marks.

36.   This is disclosed through publicly available "jobber contracts" with

franchisees.[3]

37.   These provide that franchisees "will be permitted to acquire and display approved signage bearing Company's Trade Identities in connection with the advertising, distribution and/or resale of Products."

38.   BP "retain[s], at all times, the right to determine which Trade Identities will be used or displayed, and the manner of their use or display, at an Approved Retail Site and the right to restrict the use or display of certain Trade Identities to certain Approved Retail Sites."

39.   BP "ha[s] the right, at any time and for any reason, to revoke its approval to use certain or all of its Trade Identities at certain or all Approved Retail Sites."

40.   BP even controls the franchisee's ability to move signage with its marks on the premises, which require it to be informed of its "exact location."

41.   One purpose of this requirement appears to be to ensure that drivers take notice of the roadside pricing signs in deciding where to get gas.

42.    The result is that roadside price signage displaying only the low, "rock bottom" prices with Amoco marks are subject to Defendant's approval.

43.   Based on its Electronic Payment Server ("EPS") which processes debit and credit card fuel transactions, BP knows that roughly four percent of customers

---

[3] Branded Jobber Contract (Retail) between BP and franchisee.

pay cash.[4]

44.   This is because it keeps track of how many discrete fueling events occur and the breakdown by payment method.

45.   By advertising only the lowest prices without disclosing this will not apply to almost all purchasers, Defendant receives about $7.00 more per re-fuel of 10 gallons, based on the seventy cents per gallon surcharge revealed only at the point of sale, an increase of 18 percent.

46.   To the extent BP lacks complete control over the signage, it aids, abets and/or contributes to the incomplete disclosures of only its lowest prices to motorists by continuing to process transactions at Amoco stations.

47.   BP was aware or should have been aware of New York requirements that prohibit disclosing a price that is not the highest price to customers.

48.   Plaintiff is like most consumers who does not carry around a significant amount of cash and makes many or most purchases with debit or credit cards.

49.   Plaintiff is like most consumers who looks to the roadside pricing signs of gas stations when deciding where to get gas.

50.   Plaintiff is like most users of gasoline who considers price a significant, and often the most important factor in deciding where to get gas.

51.   Plaintiff read, saw and relied on the roadside pricing signs at Amoco gas

---

[4] Gas Buddy survey.

stations.

52.   Plaintiff relied on the roadside pricing sign's omission of any mention that this price was a "cash discount" price and that he would be required to pay a higher price based on his payment method.

53.   Plaintiff, like many consumers, did not always recall the roadside sign price at the time he filled up his tank.

54.   These motorists are drawn in by the prominent bright signs advertising what appears to be a low price for gas.

55.   Plaintiff purchased gas between November 2020 and November 2023 at Amoco stations in counties including Nassau County, where he saw roadside signs advertising what he believed was a low price for gas.

56.   By the time Plaintiff pulled off the road and lined up his car to get fuel, he had already invested time and energy in choosing where to get gas.

57.   Like most motorists, Plaintiff did not expect, nor always notice, that the price at the pump was significantly, or about 18 percent, more than the price he saw from the road.

58.   Plaintiff paid the higher prices beyond what was advertised on the roadside signs because he did not necessarily recall or think about the sign price and/or did not want to get back in his car and go searching for a low gas price.

**CLASS ALLEGATIONS**

10

59.  Plaintiff seeks to represent the following class:

> All persons in New York who purchased gasoline at Amoco stations in New York in reliance on roadside signs advertising a price which was not the lowest price without any disclosures this was a discounted price during the statutes of limitations for each cause of action alleged.

60.  Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

61.  Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

62.  Plaintiff is an adequate representative because his interests do not conflict with other members.

63.  No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

64.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

65.  The class is sufficiently numerous and likely includes hundreds of thousands of people, based on the frequency with which car owners buy gas.

66.  This is because Defendant operates numerous Amoco stations in New

York which display misleading prices to drivers.

67.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### GBL §§ 349 and 350

68.   Plaintiff incorporates by reference paragraphs 1-16

69.   The purpose of the GBL is to protect consumers against unfair and deceptive practices.

70.   One of these practices is "luring or misleading customers by use of a low price available only for cash purchases," and was prohibited by GBL § 518.

71.   By failing to disclose the roadside prices were only available to cash purchasers, consumers are subjected to "unannounced price increases at the point of sale," which are unlawful and misleading.

72.   Defendant's roadside signs only disclosing cash prices are misleading and unlawful because they do not simultaneously disclose, with equal prominence, that use of a credit card will cost a specified amount more.

73.   Instead of posting the highest possible price motorists would pay, Defendant advertised the lowest price without disclosing this price was contingent on the chosen payment method.

74.   According to the New York Attorney General's Office, a gas station's

"roadside listing of a (cash) price without equally prominent disclosure of the higher standard price for credit purchases" is a violation of GBL § 349, which prohibits deceptive practices.

75.   Defendant's roadside signs listing only the cash prices is also contrary to Agriculture and Markets Law ("AGM") § 192(5), which require that "The signs and selling prices shall be posted so as to be clearly visible to the driver of an approaching motor vehicle or motorboat."

76.   Defendant's practices inhibit accurate price comparisons because consumers are unable to easily assess advertised prices to get the most value for their money.

77.   Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading and unlawful price advertisements which were based on only displaying the lowest price instead of the highest price, causing him to pay more than he otherwise would have for gas.

## COUNT II
### Unjust Enrichment

78.   Plaintiff incorporates by reference paragraphs 1-16.

79.   Defendant received benefits and monies because it represented to Plaintiff and consumers that the price of the gas they could buy was significantly less than it was, because it only displayed its lowest price, without any disclosure this was contingent on their payment method.

80.   Principles of equity and good conscience prohibit Defendant from retaining profits made from the sale of gasoline to consumers lured in by the "rock bottom" prominently displayed cash prices.

81.   Plaintiff seeks disgorgement of such profits and establishment of a constructive trust on behalf of the Class.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary and statutory damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   December 30, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

James Chung

Chung Law P.C.
43-22 216th St
Bayside NY 11361
(718) 461-8808
jchung_77@msn.com

Michael R. Reese
Reese LLP
100 W 93rd St Fl 16
New York NY 10025
(212) 643-0500
mreese@reesellp.com