**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

MICHAEL BETZAG, individually and on
behalf of others similarly situated,

                Plaintiff,          **REPORT AND RECOMMENDATION**

    v.                      **23-cv-9602 (JMA) (ST)**

BP PRODUCTS NORTH AMERICA INC.,

                Defendant.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On December 30, 2023, Plaintiff Michael Betzag ("Plaintiff"), individually and on behalf of others similarly situated, sued BP Products North America Inc. ("Defendant") for alleged violations of New York General Business Law ("GBL") §§ 349 and 350, and unjust enrichment. Before this Court is Defendant's Motion to Dismiss (the "Motion"). For the reasons discussed below, this Court respectfully recommends that the District Court GRANT the Motion and DISMISS the Complaint.

## BACKGROUND

Plaintiff, a New York resident, complains that Amoco-branded gas stations only advertise the lower, cash price for gas on their roadside signs. According to Plaintiff, this practice misleads consumers who may or may not realize at the pump that the credit card price for gas is more expensive than the cash price advertised on the roadside signs. Plaintiff alleges that Defendant is Amoco's franchisor and therefore responsible for Amoco's signage.

# I.    FACTUAL ALLEGATIONS[1]

Plaintiff purchased gas at Amoco gas stations between November 2020 and November 2023.  Compl. ¶ 55, ECF No. 1.  Amoco gas stations "prominently display the price of gas from pylons and price boards in red LED numbers from pylons and sign boards containing or connected to its company logos, brand name and color scheme, to motorists in need of a fill up."  *Id.* ¶ 10.  Plaintiff "read, saw and relied on" these roadside signs showing "what he believed was a low price for gas."  *Id.* ¶¶ 51, 55.

However, according to Plaintiff, while "vigilant" customers realize that Amoco's roadside sign prices are not "available to them" if they do not pay cash, other customers "mentally 'check out'" and do not realize that the roadside sign price is not the price they will pay.  *Id.* ¶¶ 11, 12.  This is because the cash price listed on the roadside sign is seventy cents lower than the credit card price listed at the pump.  *Id.* ¶ 13.  For his part, Plaintiff alleges that he "relied on the roadside pricing sign's omission of any mention that this price was a 'cash' discount price and that he would be required to a pay a higher price based on his payment method."  *Id.* ¶ 52.

As a result of this practice—a practice Plaintiff describes as advertising "only the lowest prices without disclosing this will not apply to almost all purchasers"—"Defendant receives about $7.00 more per re-fuel of 10 gallons, based on the seventy cents per gallon surcharge revealed only at the point of sale, an increase of 18 percent."  *Id.* ¶ 45.

Although Plaintiff never explicitly alleges that he bought gas at Amoco using a credit card, the Complaint implies as much by alleging that "Plaintiff paid the higher prices beyond what was advertised on the roadside signs . . . ."  *Id.* ¶ 58.  Plaintiff gives several reasons for why he did so.

---

[1] The Court takes the factual allegations from the Complaint and assumes that they are true for purposes of this Motion.  *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).  Defendant acknowledges that it must do the same, but "vehemently denies Plaintiff's portrayal of the facts and disputes their accuracy . . . ."  Def.'s Mem. Law at 2 n.1, ECF No. 13-1.

First, "Plaintiff did not expect, nor always notice, that the price at the pump was significantly, or about 18 percent, more than the price he saw from the road." *Id.* ¶ 57. Second, he "did not always recall the roadside sign price at the time he filled up his tank." *Id.* ¶ 53. Third, by the time he "pulled off the road and lined up his car to get fuel, he had already invested time and energy in choosing where to get gas." *Id.* ¶ 56. And fourth, "he did not necessarily recall or think about the sign price and/or did not want to get back in his car and go searching for a low gas price." *Id.* ¶ 58. Even though Plaintiff admits that Amoco's roadside signs contain the word "cash" next to the prices, he claims that "cash" is in "significantly smaller letters than the illuminated red neon price." *Id.* ¶ 15; *see id.* images at ¶ 10. He further claims that "the roadside signs do not disclose this lower price is available only to those who use a particular payment method." *Id.* ¶ 16.

Plaintiff claims that he is like "most consumers" in that he "does not carry around a significant amount of cash," "makes many or most purchases with debit or credit cards," and "looks to the roadside pricing signs of gas stations when deciding where to get gas." *Id.* ¶¶ 48, 49. Plaintiff is also like "most users of gasoline" in that he "considers price a significant, and often the most important factor in deciding where to get gas." *Id.* ¶ 50.

Defendant and Amoco allegedly have a franchisor-franchisee relationship, in which Defendant "supplies and sells gasoline" to Amoco. *Id.* ¶ 34. Per Defendant's franchise agreement—a so-called "jobber contract"[2]—Amoco may "acquire and display approved signage bearing [Defendant's] Trade Identities in connection with the advertising, distribution and/or

---

[2] Plaintiff cites a "publicly available 'jobber contract'" from the SEC archives. *See* Compl. ¶¶ 36, 36 n.3. This contract was entered between Defendant and The Pantry Inc., and covered the period from January 1, 2013, to December 31, 2019. *See* https://www.sec.gov/Archives/edgar/data/915862/000091586213000017/ptry-20121227ex101ee4e2b.htm. It is unclear from the Complaint, or the contract itself, whether/how Amoco and The Pantry Inc. are related. It is further unclear whether the contract was in effect when the conduct at issue allegedly occurred, as the contract purportedly ended in 2019 (and Plaintiff purchased gas from Amoco between 2020 and 2023). Therefore, whether this contract even applies to Amoco, or the alleged conduct, is unclear. However, this Court must accept the factual allegations as true, and Defendant does not dispute the contract. *See* Compl. ¶¶ 35–40.

resale of Products." *Id.* ¶ 37. However, Amoco must "follow strict requirements for any signage with [Defendant's] marks." *Id.* ¶ 35; *see id.* ¶ 36. For example, under the jobber contract, Defendant retains "the right to determine which Trade Identities will be used or displayed, and the manner of their use or display, at an Approved Retail Site and the right to restrict the use or display of certain Trade Identities to certain Approved Retail Sites," as well as "the right, at any time and for any reason, to revoke its approval to use certain or all of its Trade Identities at certain or all Approved Retail Sites." *Id.* ¶¶ 38, 39. Defendant therefore controls "the franchisee's ability to move signage with its marks on the premises, which require it to be informed of its 'exact location.'"[3] *Id.* ¶ 40. As such, Amoco's roadside signs "displaying only the low, 'rock bottom' prices . . . are subject to Defendant's approval." *Id.* ¶ 42.

Defendant allegedly "knows that roughly four percent of customers pay cash . . . because it keeps track of how many discrete fueling events occur and the breakdown by payment method." *Id.* ¶¶ 43–44. Defendant allegedly knows this because of its Electronic Payment Server, "which processes debit and credit card fuel transactions." *Id.* ¶ 43.

Plaintiff also cites various statistics to support his claims. According to Plaintiff, "a survey of drivers from the National Association of Convenience Stores" found that 60 percent of drivers "would be willing to drive five minutes 'out of the way' for five cents per gallon in savings on gas, with almost 40 percent willing to drive twice that distance." *Id.* ¶ 7. Plaintiff claims that "[a]nother study found that price was the most important factor in choosing to where get gas for 79 percent of drivers." *Id.* ¶ 8. Plaintiff also claims that according to GasBuddy, "60 percent of drivers look

---

[3] Plaintiff alleges, alternatively, "[t]o the extent BP lacks complete control over the signage, it aids, abets and/or contributes to the incomplete disclosures of only its lowest prices to motorists by continuing to process transactions at Amoco stations." Compl. ¶ 46.

to roadside gas station price signs when deciding where to fill their tanks." *Id.* ¶ 9. Plaintiff also alleges that 96 percent of drivers "do not use cash at the gas station." *Id.* ¶ 12.

Plaintiff makes various class action allegations, including that he seeks to represent: "All persons in New York who purchased gasoline at Amoco stations in New York in reliance on roadside signs advertising a price which was not the lowest price without any disclosures this was a discounted price during the statutes of limitations for each cause of action alleged." *Id.* ¶ 59; *see id.* ¶¶ 60–67.

## II.     PROCEDURAL HISTORY

Plaintiff filed the Complaint on December 30, 2023. *See* Compl. Defendant moved to dismiss the Complaint on May 10, 2024, which Plaintiff opposed on June 8, 2024. *See* Mot., ECF No. 13; Pl.'s Mem. Opp'n, ECF No. 13-2. Defendant then served its reply and filed the fully briefed Motion on June 21, 2024. *See* Def.'s Reply, ECF No. 13-3. On September 30, 2024, the Honorable Joan M. Azrack referred the Motion to this Court for Report & Recommendation. *See* Docket Order, dated September 30, 2024.

## <u>LEGAL STANDARD</u>

Defendant moves to dismiss the Complaint under Federal Rule 12(b)(6) of Civil Procedure. Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12. To survive such a motion, a complaint must contain sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In doing so, the Court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Gamm*, 944 F.3d at 458. However, allegations that "are no more than conclusions are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010); *see Iqbal*, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Larsen v. Berlin Bd. of Educ.*, 588 F.Supp.3d 247, 256 (D. Conn. 2022) ("a court need not credit conclusory or contradictory allegations.").

## DISCUSSION

### I.     DECEPTIVE PRACTICES AND FALSE ADVERTISING CLAIMS

To successfully assert a claim for deceptive practices or false advertising under GBL §§ 349 and 350,[4] "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (citing *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009)); *see Montgomery v. Stanley Black & Decker, Inc.*, No. 23-cv-735, 2024 WL 939151, at *1 n.1 (2d Cir. Mar. 5, 2024) (summary order) (citing *Chen*, 954 F.3d at 500). Here, the Parties dispute whether

---

[4] The elements of GBL §§ 349 and 350 claims are the same. *See Henry v. Nissin Foods (U.S.A.) Co. Inc.*, 22-cv-363 (NGG), 2023 WL 2562214, at *3 (E.D.N.Y. Mar. 17, 2023) (noting the standard for deceptive practices under § 349 and false advertising under § 350 are "substantively identical." (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) ("Section 350 of the GBL . . . is analyzed under the same 'reasonable consumer' standard as Section 349.").

Plaintiff has alleged the second and third elements—*i.e.* whether Defendant's conduct was materially misleading, and whether Plaintiff suffered injury as a result.[5]

## A. Materially Misleading

Defendant argues that Plaintiff has not alleged that Defendant's conduct is materially misleading. To be materially misleading, "the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015) (citations and quotations omitted); *see Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). The inquiry is objective and, "contrary to Plaintiff's assertions,[6] may be resolved as a matter of law on a motion to dismiss." *Kommer v. Bayer Consumer Health*, 252 F.Supp.3d 304, 311 (S.D.N.Y. 2017) (citing *Fink*, 714 F.3d at 741 ("a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.")); *see Jessani v. Monini North Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order). As the conduct alleged here would hardly mislead a reasonable consumer acting reasonably under the circumstances, this Court agrees with Defendant.

Context is "crucial" in determining whether an advertisement would mislead a reasonable consumer. *Fink*, 714 F.3d at 742; *see Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015). Courts therefore "consider the challenged advertisement as a whole, including disclaimers and qualifying language," *Mantikas*, 910 F.3d at 636, which "may defeat a claim of deception." *Fink*, 714 F.3d at 742; *see Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F.Supp.2d 334,

---

[5] The Parties do not seem to dispute the "consumer-oriented conduct" requirement, which is met "[s]o long as the conduct at issue can 'potentially affect similarly situated consumers,'" and not just the plaintiff. *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015) (summary order) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (1995)).

[6] *See* Pl.'s Mem. Opp'n at 12 (arguing that "whether motorists expect higher prices" is a question of fact).

346 (E.D.N.Y. 2008) ("There can be no claim for deceptive acts or practices . . . when the alleged deceptive practice was fully disclosed.").  Indeed, "[c]ourts have found allegations of deceptive practices to be implausible where defendants have 'actually disclosed the very practices that were alleged to be deceptive.'"  *Congregation Yetev Lev D'Satmar, Inc. v. Engie Power & Gas, LLC*, 683 F.Supp.3d 238, 251 (E.D.N.Y 2023) (citing *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017)); *see also Rodriguez v. Cheesecake Factory Inc.*, 16-cv-2006 (JMA), 2017 WL 6541439, at *3 (E.D.N.Y. Aug. 11, 2017) ("Courts generally consider a practice not to be misleading within the meaning of § 349 when a plaintiff is provided with all the information necessary to understand the practice and its consequences—a concept sometimes referred to as 'full disclosure.'" (citations omitted)).

Even so, a disclaimer's mere presence is not alone dispositive.  *Henry v. Campbell Soup Co.*, 22-cv-431 (LDH), 2023 WL 2734778, at *3 (E.D.N.Y. Mar. 31, 2023).  As such, courts consider the disclaimer's "font size, placement, or emphasis" to determine whether the disclaimer precludes a claim of deception.  *Rivera v. Navient Sols., LLC*, 20-cv-1284 (LJL), 2020 WL 4895698, at *9 (S.D.N.Y. Aug. 19, 2020) (citing *Delgado v. Ocwen Loan Servicing, LLC*, 13-cv-4427 (NGG), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014)); *see Kommer*, 252 F.Supp.3d at 312 (finding disclaimer defeated deception claim where disclaimer was "printed in reasonably-sized font right at the top of the Instructions").

Here, considering Defendant's disclaimers and disclosures, Plaintiff fails to allege that Defendant's practices or advertisements would likely mislead a reasonable consumer acting reasonably under the circumstances.  As Plaintiff concedes, the roadside sign has a disclaimer that the advertised price is a cash price.  *See* Compl. ¶ 15.  The "cash" disclaimer is clarifying language, which "does just that—clarify."  *See Campbell Soup*, 2023 WL 2734778, at *3.  The disclaimer is

also prominent and written immediately next to the gas price; it is not buried in the fine print. *See Compl.* images at ¶ 10.

Although Plaintiff characterizes "cash" as being "significantly smaller" than the advertised price, *see id.* ¶ 15, "cash" is visible from the vantage point shown in the Complaint.[7]  The word is "hard to miss." *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F.Supp.3d 102, 115 (E.D.N.Y. 2021) ("the fact remains that the words 'Sugar 11g' are prominently displayed immediately next to the ingredient list.").  As Defendant notes, "cash" on the roadside sign is the same size as the words indicating the available fuel grades, *i.e.*, "regular," "premium," "diesel," etc.  *See* Def.'s Mem. Law at 12.  Yet, Plaintiff does not allege that the roadside sign's display of some fuel grades, but not others, is misleading.

The information on the roadside sign is also accurate and not misleading, as the cash price is, indeed, available to consumers.  *See Campbell Soup*, 2023 WL 2734778, at *3 (noting that disclaimer is not misleading where it confirms information rather than contradicts it).  The advertised price is not fictitious.  Even Plaintiff cannot argue that the cash price on the roadside sign is literally unavailable to consumers.  At most, Plaintiff can, and does, argue that most consumers do not pay with cash, and therefore do not pay the cash price for gas.  *See* Compl. ¶¶ 12, 43, 48.

Putting the roadside sign aside, Defendant "completely and conspicuously" disclosed *all* gas prices, by payment method, at the gas pump.  *Dimond v. Darden Rests., Inc.*, 13-cv-5244 (KPF), 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014).  The prices were not, as Plaintiff describes, "unannounced." *See* Compl. ¶ 71.  As the Complaint shows, Amoco's pump displays, *at eye-level*, both the cash and credit card prices for the available fuel grades. *See id.* image at ¶

---

[7] "Cash" is only hard to make out in the images in the Complaint because the photo quality is poor—not because "cash" is not prominent on the roadside sign. *See* Compl. images at ¶ 10.

13. Such an obvious disclosure could not plausibly mislead or deceive a reasonable consumer. *See Warren*, 574 F.Supp.3d at 115 ("It seems unlikely that a reasonable consumer interested in a product's sugar content would ignore the very place its sugar content is disclosed."). After all, a "reasonable consumer does not lack common sense." *Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177, 193 (E.D.N.Y. 2018). The notion that Plaintiff did not perceive—for whatever reason—the credit card price disclosed to him at the pump is a level of obliviousness that does not meet the reasonable consumer standard. *See Kommer*, 252 F. Supp.3d at 312 ("Assuming that a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under GBL § 349."). (citations and quotations omitted)); *see also Weinstein v. eBay, Inc.*, 819 F.Supp.2d 219, 228 (S.D.N.Y. 2011) ("the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by Defendants' actions.").

Ultimately, "Plaintiff, as well as any other customer, had the option of leaving [Amoco] upon seeing this disclosure." *Dimond*, 2014 WL 3377105, at *8 ("That social norms may make a person feel uncomfortable in such a situation does not result in a GBL § 349 violation."). Instead, Plaintiff ignored the information on the pump. Plaintiff hopes that this Court will do the same, arguing that "the alleged conduct is Defendant's *street signs*." Pl.'s Mem. Opp'n at 3 (emphasis added). Plaintiff apparently views the signs in isolation. This Court, however, views the signs *in context*, and that context includes the prices displayed on the pump. *See Belfiore*, 311 F.R.D. at 53 ("'The entire mosaic' is viewed 'rather than each tile separately.'" (citations omitted)).

Despite Amoco's disclosures and disclaimers, Plaintiff insists that the roadside signs were misleading. In doing so, however, Plaintiff misstates the materially misleading standard. According to Plaintiff, "Conduct is materially misleading if it involves 'information that is

important to consumers and likely to affect their choice of products,' or 'taint[s] the consumer's purchasing decisions.'" Pl.'s Mem. Opp'n at 8 (citing *Braynina v. TJX Cos.*, 15-cv-5897, 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016);[8] *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218 (S.D.N.Y. 2002)). Therefore, according to Plaintiff, "Defendant's street signs are misleading because a low price displayed on the street sign is likely to affect the motorists' choice to fill their tank and will 'taint consumers' decision to shop around at other gas stations." *Id.*

Plaintiff is incorrect, and the cases he cites do not say otherwise. First, the quote Plaintiff relies on from *Braynina* merely explains whether a deception is "material." *See* 2016 WL 5374134, at *5. Certainly, a gas price on a roadside sign could be material, in that it is "information that is important to consumers and likely to affect their choice of product." *Id.* However, that does not make it *misleading*. Second, *FTC v. 1263523 Ontario, Inc.*—an action brought under federal law—does not concern the materially misleading standard under GBL §§ 349 and 350 at all. *See generally* 205 F. Supp. 2d at 223. As mentioned, under New York law, to be materially misleading, "the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300 (citations and quotations omitted). Plaintiff's allegations do not meet that standard here.

Underscoring the implausibility of Plaintiff's claims, the Complaint is riddled with contradictions. Perhaps the biggest contradiction is that Plaintiff cannot square his own gas-buying behavior with his allegations concerning the importance of gas prices to consumers. Plaintiff asserts that he is like "most users of gasoline" in that he "considers price a significant, and often the most important factor in deciding where to get gas." Compl. ¶ 50. Yet, Plaintiff also alleges that he does not confirm the price of gas before buying it. Illustrating this issue, the Complaint

---

[8] Plaintiff cites to page *6 of *Braynina*. However, the quote Plaintiff cites is on page *5. *See Braynina*, 2016 WL 5374134, at *5.

alleges that 60% of drivers "would be willing to drive five minutes 'out of the way' for five cents per gallon in savings on gas, with almost 40 percent willing to drive twice that distance." *Id.* ¶ 7. However, Plaintiff is not one such consumer—as he, upon pulling up to Amoco's pump, would "not want to get back in his car and go searching for a low gas price." *Id.* ¶ 58. The Complaint similarly alleges that price is the "most important factor in choosing where to get gas for 79 percent of drivers." *Id.* ¶ 8. Apparently, this also does not apply to Plaintiff, who did not "always recall the roadside sign price at the time he filled up his tank," or "expect"/"notice" that the credit card price listed on the pump was higher than the cash price. *Id.* ¶¶ 53, 57. If Plaintiff were as concerned about gas prices as he suggests, he would have been more vigilant—*let alone more reasonable*—in checking the price before buying gas. He could have done this, as any reasonable consumer would, by looking at the cash and credit prices in front of him on the pump. *See Warren*, 574 F.Supp.3d at 115.

Plaintiff also claims that he "relied on the roadside pricing sign's omission of any mention that this price was a 'cash discount' price and that he would be required to pay a higher price based on his payment method." Compl. ¶ 52. This allegation is absurd. What else would "cash" indicate if not a payment method? Moreover, how could a reasonable consumer rely on a roadside sign, and decide to purchase gas based on it, "but somehow miss the Clarifying Language," i.e. "cash," written "in plain English?" *Campbell Soup*, 2023 WL 2734778, at *6. Plaintiff does not answer these questions. Instead, he doubles down, arguing that a "large portion of the motorists can be misled by the street sign even in the presence of the 'disclosure' because motorists rely heavily on the street sign for their pricing information." Pl.'s Mem. Opp'n at 8. Yet, Plaintiff does not explain how motorists could both rely "heavily" on the roadside sign and miss the word "cash" right on it.

Plaintiff's only response to these points is that an "'objective' standard is applied to the question for whether a reasonable person is misled." Pl.'s Mem. Opp'n at 7–8. That is true. However, the consumer behavior alleged in the Complaint, for the reasons explained above, is objectively unreasonable. A reasonable consumer—especially one who cares about gas prices—would not ignore "cash" on the roadside sign or the prices disclosed at the pump.

In the end, the Court must assess a claim's plausibility using common sense. *See Iqbal*, 556 U.S. at 663–64 ("determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). The allegation that Defendant's roadside sign disclosing a "cash" price misled Plaintiff for three years defies common sense. As such, Plaintiff has failed to allege that Defendant's conduct or advertising was materially misleading.

### B. Injury

Defendant also argues that Plaintiff fails to allege that he has suffered any injury. To establish injury, the plaintiff must allege that the "material deceptive act or practice caused actual, although not necessarily pecuniary, harm." *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999) (citations omitted). "Claiming that the plaintiff would not have bought the product absent the defendant's deception is not enough." *Kyszenia v. Ricoh USA, Inc.*, 583 F.Supp.3d 350, 363 (E.D.N.Y. 2022). "Rather, a plaintiff must plead something more than the defendant's deception." *Preira v. Bancorp Bank*, 885 F.Supp.2d 672, 677 (S.D.N.Y. 2012).

Here, Plaintiff appears to allege injury based on a "price premium" theory, claiming that Defendant's conduct caused him "to pay more than he otherwise would have for gas." Compl. ¶ 77. To prevail on this theory, Plaintiff must allege that because of Defendant's materially misleading practice, he "purchased a product and did not receive the full value of [his] purchase."

*Wright v. Publishers Clearing House, Inc.*, 439 F.Supp.3d 102, 114 (E.D.N.Y. 2020) (citations and quotation marks omitted); *see Olander*, 802 F.3d at 302. However, "where a plaintiff merely 'believes she was deceived into purchasing the product and spending what she did,' and there were no allegations 'related to the value of the purchased product, or how the product fell short of what it purported to be,'" GBL §§ 349 and 350 claims fail. *Pittman v. Chick-fil-A, Inc.*, 21-cv-8041(VM), 2022 WL 2967586, at *5 (S.D.N.Y. July 27, 2022) (citing *DaCorta v. AM Retail Grp., Inc.*, 16-cv-1748, 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018)). Such is the case here.

Plaintiff does not allege that he did not receive the full value of the gas he purchased. Rather, he argues that he was "overcharged by the difference in the amount he paid in credit card and the price listed on the street sign." Pl.'s Mem. Opp'n at 16. The main problem with Plaintiff's argument, however, is the problem with Plaintiff's claim overall: the price listed on the street sign, and its difference with the credit card price, was not misleading. To be sure, the cases Plaintiff cites to support his claim of being "overcharged" illustrate this very issue. *See* Pl.'s Mem. Opp'n at 16 (citing *Watts*, 579 F. Supp.2d at 349; *Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308, 316 (N.D.N.Y. 2022)). In *Watts*, the court held that plaintiffs were "overcharged" where "defendants were adding *hidden* charges" to the purchase at issue. 579 F.Supp.2d at 348 (emphasis added). In *Dunham*, the court held that the plaintiff established injury where the defendant did not disclose a surcharge *prior* to the plaintiff making a purchase. 636 F. Supp. 3d at 315. Here, there were no hidden or undisclosed charges. The "disclaimer was available to Plaintiff *before* he made any purchase." *Kommer*, 252 F.Supp.3d at 312 (emphasis added). Although Plaintiff would like this Court to believe otherwise, the Complaint shows Defendant's disclosure of the cash and credit card prices. *See* Compl. image at ¶ 13. Plaintiff's alleged harm, therefore, is just his deception claim repackaged, something that does not meet the actual injury standard. *See Wright*, 439

F.Supp.3d at 114 (noting that the alleged injury must be "separate and apart" from the deception itself); *see Small*, 94 N.Y.2d at 56 (rejecting plaintiffs' "deception as injury" theory).

Plaintiff also argues that the Second Circuit, E.D.N.Y., and S.D.N.Y. cases that Defendant cites for the actual injury standard under New York law are "inapposite." *See* Pl.'s Mem. Opp'n at 16. Plaintiff relies instead on a Ninth Circuit case applying California law, *Hinojos v. Kohl's Corp. See* 718 F.3d 1098 (9th Cir. 2013). For obvious reasons, this Court will apply New York law as the Second Circuit and District Courts in New York have so applied it, rather than follow Ninth Circuit precedent concerning California law. Besides, this case is distinguishable from *Hinojos*, where the Court held that the plaintiff had established injury where he had purchased items being falsely advertised as "marked down from a fictitious 'original' or 'regular' price." *See* 718 F.3d at 1101. Here, there are no fictitious prices. Rather, the cash and credit card gas prices are fully real, fully available, and fully disclosed. Defendant has not misrepresented the price of its product as the defendant had done in *Hinojos. See id.* at 1101 (noting that the defendant had made "material misrepresentations").

Without more, Plaintiff has failed to establish injury. However, even if Plaintiff did, it would not save his claim because, as discussed, Plaintiff has failed to show that Defendant's conduct was materially misleading. *See supra* section I. A.; *see also Dimond*, 2014 WL 3377105, at *7 ("Where a defendant 'fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff,' an action under GBL § 349 will not lie." (citing *Derbaremdiker v. Applebee's Int'l, Inc.*, 12-cv-1058(KAM), 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012)).

### C. The Parties' Other Arguments

Both Parties support their arguments with other statutes and commentary. Ultimately, those statutes and commentary are largely irrelevant, as Plaintiff's GBL §§ 349 and 350 claims fail on their face. However, as the Parties devoted substantial pages in their briefs—and in Plaintiff's case, the Complaint—to these statutes and commentary, this Court will briefly address them.

      1.  <u>N.Y. General Business Law § 518</u>

The Parties argue at length about GBL § 518. The current version the statute, which was amended in February 2024, provides, in relevant part:

> Any seller in any sales transaction imposing a surcharge on a customer who elects to use a credit card in lieu of payment by cash, check, or similar means shall clearly and conspicuously post the total price for using a credit card in such transaction, inclusive of surcharge, provided however, any such surcharge may not exceed the amount of the surcharge charged to the business by the credit card company for such credit card use. The final sales price of any such sales transaction, inclusive of such surcharge, shall not amount to a price greater than the posted price for such sales transaction. Nothing in this subdivision shall be deemed to prohibit merchants from offering a two-tier pricing system. For the purposes of this section, "two-tier pricing system" shall mean the tagging or posting of two different prices in which the credit card price, inclusive of any surcharge, is posted alongside the cash price.

Gen. Bus. Law § 518.1.[9]

The original version of the statute, which was in effect when Plaintiff filed the Complaint, provided the following:

> No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means. Any seller who violates the provisions of this section shall be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars or a term of imprisonment up to one year, or both.

*See id.* eff. June 5, 1984.

---

[9] The statute does not provide a private right of action; only a municipal or local government designee may enforce it. *See* Gen. Bus. Law § 518.

Courts have recognized that the original version of the statute was unclear on what conduct it specifically prohibited. *See, e.g.*, *Expressions Hair Design v. Schneiderman*, 975 F.Supp.2d 430, 435 (S.D.N.Y. 2013). One court even remarked that "Alice in Wonderland has nothing on" GBL § 518. *Id.* As a result, the statute was litigated in the *Expressions Hair Design* line of cases where, ultimately, the New York Court of Appeals held that a merchant complies with GBL § 518 if the merchant posts "the total dollars-and-cents price charged to credit users." *Expressions Hair Design v. Schneiderman*, 32 N.Y.3d 382, 393 (2018). According to the Court, so long as the merchant complies with the statute in this way, the merchant may have differential pricing (*i.e.* a different price for credit card and cash purchases) and even refer to the higher, credit card price as a "surcharge," "additional fee," or "extra cost." *Id.* The New York state legislature, in amending GBL § 518 in 2024, seems to have confirmed the New York Court of Appeals' understanding of the statute. *See* GBL § 518 ("Nothing in this subdivision shall be deemed to prohibit merchants from offering a two-tier pricing system.").

Here, Plaintiff alleges the following in his Complaint regarding GBL § 518:

The New York Legislature enacted General Business Law ("GBL") § 518 to prevent "duping of customers by posting or tagging low prices that turn out to be available for cash purchases only." Specifically, GBL § 518 provides that "No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means." Its purpose was to prevent luring consumers "on the basis of the 'low, rock-bottom price' [with one payment method] only to find at the cash register that the price will be higher if a [different payment method] is used." This law sought to prevent "unannounced price increases at the point of sale" by assuring the public they could "depend on advertised…prices."

. . .

The purpose of the GBL is to protect consumers against unfair and deceptive practices. One of these practices is "luring or misleading customers by use of a low price available only for cash purchases," and was prohibited by GBL § 518.

Compl. ¶¶ 1–4, 69–70.

The "luring or misleading" quote in Plaintiff's Complaint comes from *Expressions Hair Design*. *See* 32 N.Y. at 393. A fuller portion of the Court's opinion on this point reads:

> [W]e conclude that a merchant complies with General Business Law § 518 if and only if the merchant posts the total dollars-and-cents price charged to credit card users. In that circumstance, consumers see the highest possible price they must pay for credit card use and the legislative concerns about luring or misleading customers by use of a low price available only for cash purchases are alleviated.

*Id.*

In response to the Complaint's allegations, Defendant argues that GBL § 518 cannot support Plaintiff's deception claim because the original version of the statute was unconstitutional, and, as discussed, has since been amended. Plaintiff responds that Defendant's constitutional arguments are inappropriate and meritless because he is not seeking to enforce GBL § 518, as it "does not confer private right of action." *See* Pl.'s Mem. Opp'n at 17. Instead, Plaintiff asserts that he is making "a free-standing claim which happens to overlap with GBL § 518." *See id.*

In fairness to Defendant, Plaintiff put GBL § 518 at issue in the Complaint (and then again by relying on it in his opposition brief). *See* Compl. ¶¶ 1–4, 70–71; Pl.'s Mem. Opp'n at 2, 5–7, 9–11, 14. Anyone reading the Complaint could conclude that Plaintiff was trying to allege that Defendant *per se* violated GBL §§ 349 and 350 by allegedly violating GBL § 518. *See, e.g.*, *Dimond*, 2014 WL 3377105, at *7. Defendant's lengthy attack on the original statute's constitutionality is therefore unsurprising. However, GBL § 518's history speaks for itself, and this Court need not make any pronouncements regarding the original statute's constitutionality to resolve this case. *See Kreisberg v. HealthBridge Mgmt, LLC*, 732 F.3d 131, 138 (2d Cir. 2013) ("When, as here, a case may be resolved on other grounds, courts may decline to reach a constitutional question to avoid deciding constitutional issues needlessly." (citations and

quotations omitted)).  After all, there is no private right of action under GBL § 518, and this Court is not tasked, in this case, with the statute's interpretation or enforcement.

However, when construing the Complaint in Plaintiff's favor, there is perhaps an argument that GBL § 518's purpose, as the New York Court of Appeals discussed in *Expressions Hair Design*, supports the plausibility of Plaintiff's claims to some extent.  As the Court stated, "General Business Law § 518's legislative history demonstrates . . . a desire to allow differential pricing, but to avoid the duping of customers by posting or tagging low prices that turn out to be available for cash purchases only."  *Expressions Hair Design*, 32 N.Y.3d at 392–93.  Here, the price on the roadside sign is, indeed, "for cash purchases only."  *See id.*  However, there is no duping.  The price advertised on the roadside side did not "turn out" to be only available for cash purchases, but was, from the beginning, fully disclosed as a cash price.

Ultimately, Plaintiff must establish each element of his GBL §§ 349 and 350 claim regardless of GBL § 518.  *See Dimond*, 2014 WL 3377105, at *7 ("even assuming Defendants' conduct violated RCNY § 5–59 or NYCAC § 20–700, such a violation would not demonstrate a *per se* violation of GBL § 349.  Plaintiff cannot use RCNY § 5–59 and NYCAC § 20–700 to establish a violation of § GBL 349; instead, Plaintiff must establish each element of GBL § 349"); *see Brissenden v. Time Warner Cable New York City*, 25 Misc.3d 1084, 1091 (Sup. Ct., N.Y. Cty. 2009) ("there is no private right of action for a violation of 47 USC § 543(f), and plaintiff cannot use GBL § 349 to circumvent the lack of private right of action under this federal statute . . . Plaintiff must still prove each of the elements of an unfair trade practices"); *see also Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 172 (2013) (noting that GBL § 349 "does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive

consumers."). Plaintiff has failed to do so.[10]  *See* Pl. Mem. Opp'n at 17.  Under the statutes applicable here—GBL §§ 349 and 350—Plaintiff has not shown that Defendant's conduct would mislead a reasonable consumer acting reasonably under the circumstances.  Accordingly, this Court need not further address the Parties' remaining arguments regarding GBL § 518.

### 2.  N.Y. Agriculture & Markets Law § 192(5)

The Parties make various arguments concerning New York Agriculture & Markets Law ("AGM") § 192(5).  In the Complaint, Plaintiff alleges that "Defendant's roadside signs listing only the cash prices is also contrary to AGM § 192(5), which require that 'The signs and selling prices shall be posted so as to be clearly visible to the driver of an approaching motor vehicle or motorboat.'"  Compl. ¶ 75.  Defendant responds that it is, in fact, in compliance with the statute, and that Plaintiff misconstrues the statute.  Defendant points to § 192(5)(a)(i) specifically, which provides:

> It shall be unlawful for any person, firm or corporation to sell or offer for sale at retail for use in internal combustion engines in motor vehicles or motorboats any motor fuel unless such seller shall:
>
> post and keep posted on the **dispensing device** from which such motor fuel is sold or offered for sale a sign or placard, at least twelve inches in height and at least twelve inches in width, stating clearly and legibly with the whole cent numerals at least nine inches in height and at least two inches in width, the selling price per gallon of such motor fuel

N.Y. Agric. & Mkts. § 192(5)(a)(i) (emphasis added).  As Defendant notes, the Complaint shows that Amoco's pumps—*i.e.* the dispensing devices—list "the selling price per gallon of such motor fuel."  *See* Compl. image at ¶ 13.

---

[10] The cases Plaintiff cites—*Cohen v. JP Morgan Chase & Co.* and *Nick's Garage*—do not change this.  *See* Pl.'s Mem. Opp'n at 17.  In *Nick's Garage*, the court held that evidence supported a claim that an insurer engaged in deceptive conduct under GBL § 349 regardless of whether the conduct violated a separate statute.  *See* 875 F.3d at 127.  In *Cohen*, the court merely declined to conclude that a mortgage lender's charging of a particular fee, which may or may not have violated a separate law, could not constitute a deceptive practice.  *See* 498 F.3d 111, 126–27 (2d Cir. 2007).

Plaintiff does not respond to Defendant's argument that Plaintiff misconstrues the statute. Instead, Plaintiff argues that Defendant cannot invoke AGM § 192 as a safe harbor to shield itself from liability. Pl.'s Mem. Opp'n at 3–5. Plaintiff also argues that the AGM does not "affirmatively permit" Defendant's roadside sign, and that the AGM is inapplicable to this case, as the statute only relates to the price posted on the dispensing device. *See id.* This last argument is confusing, as Plaintiff was the one who raised AGM § 192(5) in his Complaint in the first place. *See* Compl. ¶ 75 (alleging that "Defendant's roadside signs listing only the cash prices is also contrary to AGM § 192(5)"). As Plaintiff now concedes that AGM § 192 does not apply to the complained-of conduct, and Defendant confirms in its Reply that it is not invoking the statute as a safe harbor, this Court need not further address AGM § 192's applicability to this case.

### 3. Commentary From the New York Attorney General's Office

Plaintiff also makes allegations concerning comments from a former, unspecified New York State Attorney General. *See* Compl. ¶ 14. Specifically, Plaintiff alleges, without citation, that "According to a former New York State Attorney General, this price increase 'is a classic example of bait and switch. Consumers were lured in by the lower price but when they went to fill up their tanks, they were hit with a higher price if they didn't pay with cash.'" *Id.* Plaintiff further alleges, without citation, that "According to the New York Attorney General's Office, a gas station's 'roadside listing of a (cash) price without equally prominent disclosure of the higher standard price for credit purchases' is a violation of GBL § 349." *Id.* ¶ 74.

According to Defendant, Plaintiff is referring to a letter that an Assistant Attorney General In-Charge sent to a gas station (not Amoco) in 2011. *See* Def.'s Mem. Law at 7. This Court has found reference to that letter in Judge Garcia's dissenting opinion in *Expressions Hair Design*. There, Judge Garcia stated:

Tellingly, the New York Attorney General's Office has historically invoked state prohibitions on deceptive business practices and false advertising—not General Business Law § 518—to combat the use of undisclosed surcharges and similar bait-and-switch tactics (*see* Cease & Desist Letter from the Office of the Attorney General, June 2, 2011 at 1 [noting that gas station's "roadside listing of a (cash) price without equally prominent disclosure of the higher standard price for credit purchases" violates "the New York Executive Law 63(12) prohibition against deceptive acts and practices, as well as the General Business Law 349 prohibition against deceptive business practices"]).

*Expressions Hair Design*, 32 N.Y.3d 418–19 (Garcia, J., dissenting).

Construing the Complaint in Plaintiff's favor, this purported Cease & Desist letter could perhaps support the plausibility of Plaintiff's claims. However, it is unclear from both the Complaint and Judge Garcia's dissent whether the roadside sign in that instance displayed the word "cash" next to the advertised prices. Indeed, Plaintiff provides no additional context for this letter, so it is unclear whether the circumstances in that instance match those before the Court in this case. This Court will not speculate about a 14-year-old letter which, in any event, is not binding law. Without more, the allegations concerning this letter do not save Plaintiff's deficient claims.

### 4. Commentary From the New York Bureau of Weights & Measures

In response to Plaintiff's allegations concerning the Attorney General's letter, Defendant points to a 2012 survey, in which New York's Bureau of Weights and Measures reported:

According to the New York State Bureau of Weights and Measures, gas stations may give cash discounts if certain conditions are met. This includes making sure the (1) consumer is able to select "cash" or "credit" by using the dispenser controls, (2) dispenser window displays the correct price when the consumer selects "cash" or "credit," and (3) "pump-topper signs" display both cash and credit prices.

The bureau states that the signs by the road do not have to show both credit and cash prices, but whichever price is advertised should be clearly and correctly labeled in letters large enough to be read from the road.

Def.'s Mem. Law at 8.

Plaintiff argues that Defendant cannot use the survey as a safe harbor to shield itself from liability. *See* Pl.'s Mem. Opp'n at 4. Defendant responds that it is not using the survey as a safe harbor, but to "indicate the lack of deception." *See* Def.'s Reply at 7 n.5. Regardless, this Court need not look outside the Complaint to determine that Plaintiff has failed to state a claim, and therefore declines to further address this survey.

### 5. Commentary From the New York Division of Consumer Protection

Finally, Plaintiff cites consumer alerts from the New York Division of Consumer Protection ("DCP"). *See* Compl. ¶¶ 5, 6. As with other cited commentary, Plaintiff hopes that these consumer alerts will support the plausibility of his claims. A closer inspection of these consumer alerts, however, reveals just the opposite. Even though Plaintiff relies on these very consumer alerts to make allegations in his Complaint, he apparently does not rely on the advice contained therein when purchasing gas.

For example, Plaintiff cites a DCP consumer alert from June 2022, alleging that it cautions New Yorkers to "COMPARE the price advertised on the gas station's sign and on the pump to make sure they are the same."[11] *See* DCP, Consumer Alert: NYS Division of Consumer Protection Offers Tips to New Yorkers to Save Money at the Gas Pump (June 9, 2022), https://dos.ny.gov/news/consumer-alert-nys-division-consumer-protection-offers-tips-new-yorkers-save-money-gas-pump (hereinafter "Tips to New Yorkers"). Plaintiff omits, however, the sentence immediately following, which reads, "If not, ask which price is the one you would actually be paying." *See id.* Apparently, Plaintiff does not heed this advice despite his allegations that the price at the pump is higher than the price on the roadside sign. *See* Compl. ¶ 13. The same consumer alert even advises consumers to "ASK your gas station if they have different prices

---

[11] The Complaint alleges that this consumer alert is from December 2022. However, based on this Court's research, this consumer alert appears to be from June 2022.

for payment in cash or credit. Some stations offer gas at several cents less per gallon if you pay in cash." *See* Tips to New Yorkers. Based on this tip, the DCP does not view gas stations' differential pricing as misleading, but as an opportunity for consumers to save money.

Other tips in this consumer alert undermine Plaintiff's other allegations. For example, Plaintiff cites a survey finding that 60 percent of drivers "would be willing to drive five minutes 'out of the way' for five cents per gallon in savings on gas, with almost 40 percent willing to drive twice that distance." Compl. ¶ 7. However, the DCP advises consumers to do the opposite. According to the consumer alert, consumers should "try to use a station that is on your route so you aren't driving extra miles" because "[d]riving out of your way to save money at the pump may not save you anything." *See* Tips to New Yorkers. A reasonable consumer, therefore, in the DCP's view, would not drive "out of the way" in search of cheaper gas. *See id.*

Plaintiff cites another consumer alert from December 2020. *See* Compl. ¶ 5. Plaintiff alleges that this consumer alert reminds consumers that "'businesses are required to inform [them] of the higher [] price for a product or service by posting the higher price' before they reach the point of sale." *See id.* However, a closer review of this consumer alert reveals that Defendant's conduct is not necessarily at odds with the DCP's view. The consumer alert states that "businesses are required to inform consumers of the higher credit card price for a product or service by posting the higher price. Businesses are also able to offer a discount to consumers who pay in cash." *See* DCP, Consumer Alert: NYS Division of Consumer Protection Alerts Consumers to NY Law Related to Credit and Debit Card Surcharges (December 8, 2020), https://dos.ny.gov/news/consumer-alert-nys-division-consumer-protection-alerts-consumers-ny-law-related-credit-and. The DCP's statements do not indicate that it opposes a differential pricing

system between credit and cash prices so long as the business discloses the credit card price.[12] Considering these issues, the DCP consumer alerts cited in the Complaint do not save Plaintiff's claims.[13]

## II.   UNJUST ENRICHMENT

Plaintiff's unjust enrichment claim also fails.  To state an unjust enrichment claim under New York law, a plaintiff must show that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is "against equity and good conscience" to allow the defendant to retain what plaintiff seeks to recover.  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (2018) (citing *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)).  Although a plaintiff may assert an unjust enrichment claim in the alternative to his other claims, an unjust enrichment claim will not survive a motion to dismiss where the plaintiff fails to explain how his unjust enrichment claim is not duplicative of his other causes of action.  *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 19-CV-2886(EK)(PK), 2021 WL 4502439, at *7 (E.D.N.Y. Sept. 30, 2021) (dismissing the plaintiff's unjust enrichment claim as duplicative of his GBL §§ 349 and 350 claims); *see E.J. Brooks Co.*, 31 N.Y.3d at 455 (noting that unjust enrichment is not "a catchall cause of action to be used when others fail." (citations omitted)).

Here, Plaintiff relies on the same allegations for his unjust enrichment claim as for his other claims.  Rather than attempt to distinguish the bases for his claims, he emptily asserts that he is

---

[12]  Moreover, this consumer alert includes a list of hypothetical transactions—including ones involving gas purchases—that Plaintiff curiously does not address.  *See id.*
[13] This Court would be remiss not to note that, in searching for Plaintiff's cited consumer alerts, the Court came across the New York Department of State's ("DOS") "Gas Saving Tips" page.  *See* DOS, Gas Saving Tips, https://dos.ny.gov/gas-savings-tips (last visited Jan. 15, 2025).  There, one tip includes: "CONSIDER using a credit or debit card which provides reward points, coupons or other membership benefits for your purchase of gas as long as you will pay your bill in full each month to avoid interest charges.  Thus, you will be offsetting your high gas costs with savings in other venues."  This tip is notable, as it suggests that reasonable consumers might embrace the credit card price of gas to obtain card-related benefits.  However, as this webpage is outside the Complaint, this Court does not consider it in assessing the plausibility of Plaintiff's claims.

entitled to "equitable recovery under a theory of unjust enrichment" even if he has failed to establish his GBL claims. *See* Pl.'s Mem. Opp'n at 17–18. Not so. Because Plaintiff relies on the same allegations for his unjust enrichment claim as for his other claims, and those claims fail, the Court should also dismiss the unjust enrichment claim. *See Warren*, 574 F.Supp.3d at 120 ("When an unjust enrichment claim rests on the same allegations as a complaint's other claims for consumer deception, that claim 'must be dismissed as duplicative' when the other claims fail." (citations omitted)); *Engram*, 2021 WL 4502439, at *7; *see also Valencia v. Snapple Beverage Corp.*, 23-CV-1399 (CS), 2024 WL 1158476, at *6 (S.D.N.Y. Mar. 18, 2024) ("Because her 'unjust enrichment claim relies on the same operative facts as her other claims . . . to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for plaintiff's unjust enrichment claim would necessarily crumble.'" (citations omitted)).

### III. VOLUNTARY PAYMENT DOCTRINE

Defendant also argues that the voluntary payment doctrine bars Plaintiff's claims. The doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003). "The doctrine can bar both statutory claims under GBL § 349 and common law claims." *Fishon v. Peloton Interactive, Inc.*, 620 F.Supp.3d 80, 106 (S.D.N.Y. 2022) (citing *Shelton v. CIOX Health, LLC*, 2018 WL 4211447, at *2 (E.D.N.Y. July 20, 2018)); *see Wurtz v. Rawlings Co., LLC*, 12-cv-1182 (JMA), 2016 WL 7174674, *6 (E.D.N.Y. Nov. 17, 2016) (noting that there is significant caselaw applying the voluntary payment doctrine to GBL § 349 claims). Here, as Plaintiff has failed to adequately allege his claims, this Court need not assess whether the voluntary payment doctrine otherwise bars them.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT Defendant's Motion and DISMISS the Complaint.

## OBJECTIONS TO THIS REPORT AND RECOMMEDATION

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 Fed. Appx. 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**


      /s/_____
Steven Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
January 23, 2025